## Swartz v. Helm

*Herbert G. Rupp, Jr.,* for plaintiffs.

*Edward Friedman,* Attorney General, and *Raymond Kleiman,* Deputy Atty. General, for defendants.

BOWMAN, J., September 30, 1966.—By complaint in mandamus, plaintiffs seek an order of this court directing the Secretary of the Commonwealth to accept and file their nomination papers and to thereafter certify to the appropriate county boards of election their names as candidates for public office of the Constitutional Party—an independent political body—at the forthcoming general election. Three of the plaintiffs seek State-wide office;[1] the others seek office as either representative to the United States Congress or to the General Assembly of Pennsylvania from particular districts in the Commonwealth.[2]

After the case was at issue on the pleadings, the parties filed a written stipulation of facts and waiver of jury trial.[3] Having been argued before the court en banc, it may now be disposed of on its substantive merits.

The following stipulated facts supply the background for the legal issues raised in this controversy.

Within the time prescribed by law, plaintiffs and other persons not parties hereto offered to the Direc-

---

[1] Plaintiffs Swartz, Swaney and Reeve seek the office of Governor, Lieutenant Governor and Secretary of Internal Affairs, respectively.

[2] Fred D. Bruckman, one of the original plaintiffs, has since withdrawn as a party plaintiff. His candidacy is no longer in issue.

[3] As authorized by Act of April 22, 1874, P. L. 109, 12 PS §688.

tor of the Bureau of Elections of the Commonwealth for filing nomination papers for various public offices as candidates of the Constitutional Party, an independent political body. "Each of the nomination papers offered for filing consisted of nomination sheets containing nominations for the offices of Governor, Lieutenant Governor and Secretary of Internal Affairs. In addition to said nominations, each of said nomination sheets consisted of nominations of individuals for United States Congressmen and Representatives of the Pennsylvania General Assembly. In addition thereto, a number of nomination sheets contained only nominations for Governor, Lieutenant Governor and Secretary of Internal Affairs. The said sheets were consecutively numbered 1 thru 613, inclusive": paragraph 9 of stipulation.[4] "The nomination papers offered for filing by the plaintiffs herein were rejected by the defendants because the defendants allege that: (1) (a) certain of the said nomination papers did not contain the number of signatures required by law for certain of the candidates named therein; (b) by reason whereof said nomination papers were rejected in accordance with the provisions of Sections 951 and 976 of the Election Code; (c) said provisions require that in such cases, the nomination papers shall forthwith be rejected and returned; (d) the result being such nomination papers could not be counted for any candidate, and (e) by reason whereof all the remaining candidates appearing thereon had insufficient signatures on the remaining nomination sheets to qualify them for the offices named thereon also requiring their rejection, and that (2) (a) certain of the

---

[4] We interpret this to mean that all of the nomination papers and their constituent sheets pertained to the candidacy of plaintiffs seeking State-wide office, and that an unspecified number also pertained to the other plaintiffs, or other persons not plaintiffs here, seeking other than State-wide office.

said nomination papers combined the nominations of candidates thereon for both state-wide and district offices; (b) by reason whereof said nomination papers were rejected in accordance with the provisions of Sections 951 and 976 of the Election Code; (c) said provisions require that in such cases, the nomination papers shall forthwith be rejected and returned; (d) the result being such nomination papers could not be counted for the candidates named thereon and (e) by reason whereof all the candidates appearing thereon had insufficient signatures on the nomination papers to qualify them": paragraph 10 of stipulation.

For the reasons stated above, defendants rejected all of the nomination papers in question and returned the filing fees tendered by the various candidates. Letters to this effect were mailed to all candidates, and the nomination papers themselves were returned to the State-wide candidates.

In addition to stipulating the facts, the parties also stipulated the outcome depending upon the court's conclusion as to the legal issues involved. Because of the brevity of stipulated facts, these stipulations are now recited to more lucidly frame legal issues.

"If the defendants' rejection of the nomination papers of all the parties named thereon, based on either of the conclusions of paragraph 10 (1) and 10 (2) above, is correct, then all the plaintiff candidates are disqualified from appearing on the ballot for the Constitutional Party in the General Election to be held on November 8, 1966": paragraph 11 of stipulation.

"If the defendants' rejection of the nomination papers of all the parties named thereon, based on both of the conclusions of paragraph 10 (1) and 10 (2) above is incorrect, then all the plaintiff candidates, with the exception of Fred D. Bruckman, who has been removed as a party plaintiff on his own motion, and other persons not parties hereto, are qualified to appear on the

ballot for the Constitutional Party, in the General Election to be held on November 8, 1966": paragraph 13 of stipulation.

As further preface to considering the legal issues confronting us, it might be well to distinguish between the less familiar election process relating to nominees for public office by *political bodies* and the more familiar process relating to nominations by *political parties*. This distinction was admirably set forth by the late President Judge Walter R. Sohn of this court in Brown v. Finnegan, 8 D. & C. 2d 780, 70 Dauph. 353 (1957), affirmed per curiam 389 Pa. 609 (1957). He stated, at page 783:

"In solving the question before us, we must consider that the Pennsylvania Election Code establishes two basic methods of nominations for political office: (1) by selection at a primary election, or (2) by nomination papers. The former method is limited to candidates for the nomination of a political party; the latter method, to candidates for the nomination of a *political body*. The terms 'political party' and 'political body' are not interchangeable. As a basic proposition, a party is an organization which has polled a sufficiently large number of votes at the preceding general or municipal election to entitle it to nominate all its candidates for office and to elect all its party officers at primaries, under the provisions of the Election Code. An organization which does not poll the requisite number of votes at the preceding election cannot nominate candidates or elect its officers at primaries. It can only nominate candidates by *nomination papers*.

"A candidate for a party nomination must stand for selection at a primary. In order to get on the primary ballot, he must file a *nomination petition* signed by a requisite number of registered members of his party. If he is chosen at the primary election as his party's nominee, he runs for the particular office at the ensu-

ing general or municipal election. With respect to a particular body's nominee, however, an entirely different procedure is necessary. A political body's nominee is nominated directly by the body, through filing *nomination papers* containing a requisite number of signatures. It follows that the nominees for office at a November election can get on the ballot by one of two ways; by political party nomination at a primary election, or by political body nomination through papers.

"A nominee by papers has to obtain a much larger number of signatures than a candidate for party nomination by petition. He also is subject to different provisions of the Election Code from a candidate by petition. A candidate for party nomination is required to follow sections 901 to 923 of the Election Code, 25 PS §§2861 to 2883. A candidate of a political body by nomination papers is governed by sections 951 to 954 of the Election Code, 25 PS §§2911 to 2914".

The parties have also stipulated the legal issues to be:

"Are defendants required to accept for filing nomination papers having more than one candidate appearing thereon, for offices to be elected under the name of the Constitutional Party, where certain of the said papers did not contain the number of signatures required by law for one or more of the candidates named therein; by reason whereof the Election Code required said papers to be rejected and returned so that the remaining candidates appearing thereon lacked sufficient signatures on the remaining sheets to qualify them, also resulting in the rejection of such remaining sheets?": paragraph 14(a) of stipulation.

"Are defendants required to accept for filing nomination papers having more than one candidate appearing thereon, for offices to be elected under the name of the Constitutional Party, where the nomination papers combined the nominations of candidates

named thereon for both the state-wide and district offices; by reason whereof the Election Code required said papers to be rejected and returned?": paragraph 14(b) of stipulation.

In rejecting and returning all of said nomination papers for the reasons specified, did the secretary correctly construe the statutory law which the parties have stipulated as decisive of the legal issues raised?

Section 951 of the Pennsylvania Election Code,[5] one of these sections, provides in material part as follows:

"Section 951. Nominations by Political Bodies.

"(a) . . . nomination of candidates for any public office may also be made by nomination papers signed by qualified electors *of the State, or of the electoral district* for which the nomination is made, and filed in the manner herein provided. Such nomination papers shall be in form prescribed by the Secretary of the Commonwealth, and no other forms than the ones so prescribed shall be used. . . .

"(c) Each person signing a nomination paper shall declare therein that he is a qualified elector of the State or district, *as the case may be* . . . No elector shall sign *more than one* nomination paper for each office to be filled, *unless* there are two or more persons to be elected to the same office, in which case he may sign nomination papers for as many candidates for such office as, and no more than, he could vote for at the succeeding election. *More than one candidate may be nominated by one nomination paper and candidates for more than one office may be nominated by one nomination paper:* Provided, That each political body nominating does not nominate more candidates than there are offices to be voted for at the ensuing election: And provided, That *all the signers on each nomination pa-*

---

[5] Act of June 3, 1937, P. L. 1333, as amended, 25 PS §2911. All references hereafter are to this statute unless specifically noted otherwise.

*per are qualified to vote for all the candidates nominated therein.*

"(d) *Nomination papers may be on one or more sheets and different sheets must be used for signers resident in different counties.* If more than one sheet is used, they shall be bound together when offered for filing if they are intended to constitute one nomination paper, and each sheet shall be numbered consecutively, beginning with number one (1) at the foot of each page. . . ." (Italics supplied).

The particular provisions of this section giving rise to this controversy are those which permit the use of multiple candidate nomination papers by those seeking public office under the aegis of a political body. The authority to use such multiple-candidate nomination papers is peculiar to nominations by political bodies; no comparable provisions are found pertaining to nominations by political parties. This authority is stated in the following language:

"More than one candidate may be nominated by one nomination paper and candidates for more than one office may be nominated by one nomination paper".

Taken literally, and without regard to the other provisions of section 951 and other provisions of the code, this language would seem to permit, without limitation or qualification, any and all, and as many candidates of a political body as choose to do so, to join their candidacies in one nomination paper. That such a literal meaning cannot be ascribed to these provisions, both contestants recognize by reason of the impact of other provisions of the code upon the language in question.

What are these other provisions and how do they influence the meaning to be ascribed to the language with which we are confronted?

Section 953 of the code requires candidates for State-wide office, United States Congress, the Pennsyl-

vania General Assembly and judges of courts of record to file their nomination papers with the Secretary of the Commonwealth; all others with the appropriate county board of elections.

Both parties agree that these filing requirements preclude candidates who must file with the secretary from joining in one nomination paper with candidates who must file with a county board, notwithstanding the apparent unlimited and unconditional authority for use of multiple-candidate nomination papers as expressed in section 951.

There is also found in other provisions of section 951 the requirement that the signers of each nomination paper be qualified to vote for *all* of the candidates named in a multiple-candidate nomination paper. It is apparent that such a requirement also has a very real and direct impact upon the permitted use of multiple-candidate nomination papers. Those of different election districts cannot join in one such paper for want of qualification of the signers to vote for all of them.

Because we are here concerned with multiple-candidate nomination papers involving State-wide candidates joined in by district candidates and, in some cases, candidates whose election district is encompassed within the larger election district of his fellow candidates, this requirement is not directly involved in this controversy. Defendants, however, contend that, being a clear limitation upon the ostensible unfettered authority to use multiple-candidate nomination papers, it must be considered in the ultimate determination of the meaning to be ascribed to the disputed language. Furthermore, they insist that these two already mentioned limitations upon the use of multiple-candidate nomination papers, when considered with two other requirements, must lead to the conclusion that once candidates of a political body "in-

extricably ally themselves for the purpose of submitting nomination papers containing their multiple candidacies, they all must assume the burden of qualifying as a body, and failing qualification, their candidacies must fall as such".

The other two provisions of the code upon which defendants rely are subsection (a) of section 951 and section 976. The former requires candidates of political bodies seeking State-wide office to obtain qualifying signatures at least equal to one half of one percent of the largest vote cast for an elected State-wide candidate at the last preceding election involving a State-wide office; in all other nominations, the qualifying signatures must at least equal two percent of the largest vote cast for any office except judge in the district in question. The latter directs the secretary to "reject and return" the nomination papers of candidates who fail to qualify.

Defendants contend that to reach any conclusion contrary to the one they here advance would make it impossible for the secretary to perform his duty to reject and return unqualified nomination papers and would produce an unworkable and unrealistic result. Alternately, they argue that the decision of the Supreme Court in Wakefield's Appeal (No. 1), 229 Pa. 581 (1911), prohibits State-wide candidates from joining in one nomination paper with candidates for district offices.

Plaintiffs counter these averments by arguing:

(a) that the provision of section 976 requiring the secretary to return nomination papers of unqualified candidates is merely directory;

(b) that the Wakefield decision, dealing with a prior and now repealed election statute, is neither controlling nor persuasive;

(c) that to accomplish the desired goal of encouraging broad participation of candidates for public office

and affording to the electorate a wide choice of selection requires a liberal construction; and

(d) that the construction they advocate is necessary to avoid a construction that would render the code unconstitutional as it pertains to political bodies.

Section 976 provides, in material part, as follows:

"When any . . . nomination paper is presented . . . [to] the Secretary of the Commonwealth or . . . any county board of elections for filing . . . it shall be the duty of the said officer or board to examine the same. No . . . nomination paper . . . shall be permitted to be filed if—(a) it contains material errors or defects apparent on the face thereof . . . or (c) *it does not contain a sufficient number of signatures as required by law . . . The invalidity of any sheet of a . . . nomination paper shall not affect the validity of such . . . paper if a sufficient . . . paper remains after eliminating such invalid sheet . . .*

"Upon completion of any examination, if any nomination . . . paper is found to be defective, it shall forthwith be *rejected and returned to* the candidate or *one of the candidates* named therein. . . ." (Italics supplied).

It has been stipulated that some of the multiple-candidate nomination papers offered to the secretary for filing contained less than the requisite number of qualifying signatures for at least one candidate named in such multiple-candidate nomination papers. Asserting the provisions of section 976 as the authority for their action, defendants rejected these nomination papers as to *all* candidates. In so acting, defendants essentially rely not on their indisputable duty to reject the candidacy of the individual lacking the requisite number of qualifying signatures, but on the requirement that a rejected nomination paper be *returned* to the candidate or *one of the* candidates.

By asserting the dual nature of their mandatory

duty to not only reject, but also to return any such nomination paper, defendants, in effect, are imposing a third condition or limitation on the key language of the statute permitting candidates for more than one office to be nominated by one nomination paper. Defendants are saying that candidates named in a multiple-candidate nomination paper must not only be limited to those filing in the same filing office and be exclusively State-wide or exclusively district candidates, but also that these candidacies must be for such offices as require the same number of qualifying signatures for their respective offices. The only possible alternative to attaching this third condition to the use of such nomination papers by persons seeking *different* offices could only be defendant's ultimate conclusion that a candidate, by joining with others in the use of a multiple-candidate nomination paper, simply assumes the risk that if any one of them fails to qualify, all others fall with him.

We cannot agree that either the third mentioned condition is properly attached to the use of such papers, nor that there is an inherent risk of one person's candidacy falling for want of another to qualify.

If "candidates for more than one office may be nominated by one nomination paper" is more than a mere redundancy of the language which precedes it in section 951, it must mean that candidates for *different* offices may join in one nomination paper. Any number of examples could be recited wherein candidates for *different* offices would require different numbers of qualifying signatures. But one example, limited to only district offices, would be a multiple-candidate nomination paper containing the candidacy of one person for United States Congress, one for the State Senate and one for the State House of Representatives. Each would require a different number of qualifying signatures. It would seem clear, therefore, that the

suggested third condition upon the use of multiple-candidate nomination papers is not supportable if any significance is to be given to the specific provisions of the statute permitting candidates for different office to use one nomination paper.

This leaves only defendant's ultimate contention that all candidates, by choosing to join in one nomination paper with other candidates, assume the risk that if a fellow candidate fails to qualify, all other candidates fall with him. This has been described as the "domino theory". In our opinion, it is just that and no more, as we cannot attach an implied condition with such dire consequences to the otherwise clear statutory authority permitting candidates for different offices to join in one nomination paper. And this is particularly so where the purported support for such a theory goes to the responsibility of the secretary—or a county board of elections—to "reject and return" an unqualified nomination paper to the candidate or one of them. One searches in vain for any hint or suggestion, in the sections of the statute dealing with the use, contents of and limitations upon the use of nomination papers, of any such limitation or condition. Not even the most wary could read these provisions and conclude that by joining in one nomination paper with other candidates, a candidate thereby becomes engaged in a game of dominoes resulting in his candidacy being knocked down because a fellow candidate tumbles.

We believe it to be unnecessary to engage in a dissertation upon the merits of whether liberal or strict rules of construction should be applied in deciding this issue. It is simply our opinion that the legislature did not intend such a result based upon an inference which, in turn, finds its source in provisions dealing with the duties of the filing officer.

In directing a rejected nomination paper to be returned to the candidate "or one of the candidates",

we believe the legislature was attempting to obviate an otherwise impossible situation as to the duties of such officer in returning a multiple-candidate nomination paper to *all* of the candidates where, for any number of reasons, the nomination paper was rejected as to all of the candidates.

If as many candidates of a political body as otherwise qualify may seek office through use of individual nomination papers, but choose instead to join in one nomination paper as specifically authorized to do— they do not, as defendants contend, by this single act thereby inextricably ally themselves for the purpose of submitting nomination papers with the attending result that all must qualify or all must be disqualified. Again we say that we can find no such special significance attached to the provisions by which the legislature has authorized political bodies to present their candidates to the voters.

As an alternate argument, defendants contend that State-wide candidates and those for district offices cannot join in one nomination paper. They contend that the Wakefield decision so holds and prescribes two general classes, those candidates for State-wide offices and those for district offices. The stipulated facts of this case disclose that a substantial number of the nomination papers filed were those of individuals for both State-wide and district offices. For this reason, the secretary rejected these nomination papers and assigned as his authority for doing so said decision.

In the Wakefield case, the sole legal issue was whether the preemption of a party name for State purposes afforded to the State-wide candidates or those who preempted the name for State-wide purposes the exclusive right to control the use of the name in the nomination of candidates for offices of less than State-wide scope. In concluding that it did not, the court stated, page 584:

". . . If the nomination be for a state office the number of signers must be at least one-half of one per cent of the largest vote for any officer elected in the state at the last preceding election; if for a district office, two per cent of the largest entire vote for any officer elected in that district at the last preceding election. Thus it clearly appears that nominations by separate nomination papers must be made for each class of offices. If the nomination is for a state office, the pre-emption is for that purpose; if for a district office, the pre-emption is for the district".

Superficially, this decision would seem to lend support to defendant's position. However, the election statute there involved [6] contained no provisions similar to the crucial language here involved. In prescribing the use and contents of nomination papers, the concept of multiple-candidate nomination papers was not recognized. Therefore, we do not consider this decision controlling under the present statutory law on the subject. It might also be added that the particular district office in question in that case was a local office, the filing for which was made with the county board of elections as opposed to the filing with the secretary by the State-wide candidate—a condition upon the unlimited use of multiple-candidate nomination papers which we have recognized as inherent in the present law. We, therefore, reject this alternative contention.

Based upon the foregoing reasons and conclusions as applied to stipulated results to follow, as agreed to by the parties, we make the following

ORDER

And now, September 30, 1966, upon presentation of the several nomination papers of Edward S. Swartz, Richard U. Swaney, Lester G. Reeve, Jr., John I. Mc-

---

[6] Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223.

Kenney, Helene V. Furer, Robert L. Koch, Charles M. Fischer, Leonard T. Bernhardt, Katherine L. Orpin, Charles A. S. Hill and Rev. Richard A. Harris, consisting of sheets numbered 1 to 613 inclusive for various offices as candidates of the Constitutional Party for filing, together with the filing fees required therefor, the Secretary of the Commonwealth and the Director of the Bureau of Elections of the Commonwealth are hereby directed to receive and file said nomination papers, and thereupon certify to the appropriate county boards of election their names as candidates of the Constitutional Party for the various offices to which their nomination papers pertain.