**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: NOMINATION PAPER OF ELIZABETH FAYE SCROGGIN (OR IN THE ALTERNATIVE, HOWIE HAWKINS), NEAL TAYLOR GALE (OR IN THE ALTERNATIVE, ANGELA WALKER), TIMOTHY RUNKLE, OLIVIA FAISON, AND RICHARD L. WEISS IN THE GENERAL ELECTION OF NOVEMBER 3, 2020 | : : : : : : : : : : : | No. 55 MAP 2020<br><br>Appeal from the Order of the Commonwealth Court at No. 460 MD 2020 dated September 9, 2020.<br><br>SUBMITTED: September 15, 2020 |
| APPEAL OF: PAUL STEFANO AND TONY C. THOMAS | : : | |


**OPINION**


**JUSTICE WECHT**                    **DECIDED: September 17, 2020**

This case concerns provisions of the Election Code[1] governing the nomination of candidates by political bodies and the procedures to effectuate the substitution of candidates so nominated. Ancillary to this appeal, Pennsylvania electors Paul Stefano and Tony C. Thomas ("Objectors") sought a short term stay directing the Secretary of the Commonwealth to withhold certification of the general election ballot pending this appeal, which we granted on September 14, 2020. For the reasons that follow, we affirm the Commonwealth Court's order in part, to the extent that it directs the Secretary to remove Angela Walker as the Green Party's nominee for Vice President, and reverse the order insofar as it directs the placement of Howie Hawkins on the ballot as the party's nominee

---

[1]     Act of June 3, 1937, P.L. 1333, 25 P.S. §§ 2600-3591.

for President. Because the procedures for nominating a candidate for office by nomination papers were not strictly followed here, subsequent efforts to substitute Hawkins were a nullity. Accordingly, the Secretary is directed to remove both candidates' names from the general election ballot.

**I. Factual & Procedural History**

**A.**

Between March and August 2, 2020, the Green Party of Pennsylvania ("Green Party") circulated signature pages for a nomination paper pertaining to the following slate of five candidates for federal and state office: Elizabeth Faye Scroggin for President of the United States; Neal Taylor Gale for Vice President of the United States; Timothy Runkle for Treasurer of Pennsylvania; Olivia Faison for Auditor General of Pennsylvania; and Richard L. Weiss for Attorney General of Pennsylvania. On August 3, the deadline for filing nomination papers, Runkle presented the underlying nomination paper, which consisted of 710 pages containing more than 8,500 signatures, for filing in person in the Office of the Secretary of the Commonwealth in Harrisburg. Notes of Testimony ("N.T."), 9/7/2020, at 27-28.

Relevant to this appeal, Runkle appended to the nomination paper notarized candidate affidavits for himself, Faison, and Weiss, but he did not submit affidavits for Scroggin or Gale. *Id.* at 28. Instead, Runkle's submission included a notarized candidate affidavit for Howie Hawkins and a non-notarized affidavit for Angela Walker ("Candidates"), who were nominated as the Green Party's candidates for President and Vice President, respectively, at the national Green Party Convention on July 11, 2020.

On August 10, the deadline for withdrawals and substitutions of candidates, the Green Party filed with the Secretary two Substitute Nomination Certificates, seeking to replace Scroggin and Gale with Hawkins and Walker. The certificates, which were signed and notarized on August 6 (for Hawkins) and 7 (for Walker), indicated that the cause of each vacancy was "[r]esignation," and that the substitutions of Hawkins and Walker were made by the Green Party on August 2, the day before Runkle presented the nomination paper in the filing office designated by the Department. Petitioner's Exhibit P-5 (Substitute Nomination Certificate, filed 8/10/2020); N.T., 9/7/2020, at 49-50.

Following the submission of the substitution forms, Objectors filed in the Commonwealth Court a petition to set aside the Green Party candidates' nomination paper as to the entire slate as well as to the purported substitutions and candidacies of Hawkins and Walker. In addition to global and individual signature challenges not relevant here, Objectors sought to have the Green Party slate removed from the general election ballot based upon the presidential and vice presidential candidates' alleged failure to comply with the requirements of the Election Code pertaining to candidate affidavits and substitutions. Objectors subsequently filed an application for summary relief pursuant to Pa.R.A.P. 1532 on August 24, seeking to strike the nominations of the five original candidates and the two substitutes.

On August 25, counsel for the Green Party emailed Jessica Mathis, Director of the Bureau of Elections and Notaries, to ask whether she had received a copy of Scroggin's candidate affidavit that apparently had been sent to a fax number at the Department roughly thirty minutes before the 5:00 p.m. filing deadline on August 3. Mathis responded to Candidates' counsel by affirming that, following a search on August 25 of an e-mail

account associated with the number generally used by the Department to receive faxed transmissions, a facsimile of Scroggin's affidavit had been located. N.T., 9/7/2020, at 58-59; Petitioners' Exhibit P-9. However, no affidavit was submitted, in person or by fax, on behalf of Gale. Thereafter, the parties submitted a joint stipulation acknowledging the foregoing version of events and agreeing that, aside from the affidavits for Hawkins, Walker, Runkle, Faison, and Weiss, "[n]o other candidate affidavits were appended to the Nomination Paper." Joint Stipulation of the Parties, 9/3/2020, ¶3. Objectors withdrew their remaining objections as to Runkle, Faison, and Weiss, and their names were directed to be placed on the ballot. Order, 9/3/2020 (Crompton, J.).

Objectors' challenges to the substitutions of Hawkins and Walker proceeded to an evidentiary hearing on September 7 before the Honorable J. Andrew Crompton. Mathis testified that she personally reviewed the nomination paper presented by Runkle on August 3. N.T., 9/7/2020, at 26. She described the process for conducting a preliminary review of the "four corners of the Nomination Paper" presented for filing, which includes both confirming that the nomination paper contains a facially sufficient number of signatures as well as an original, notarized candidate affidavit. *Id.* at 23-24. Mathis also indicated that she informed Runkle that he was required to file an affidavit on behalf of Scroggin and Gale because they were the candidates named in the nomination paper and therefore objections might be filed on that basis. *Id.* at 33.

Although Mathis acknowledged that the Election Code requires that a notarized candidate affidavit be submitted before nomination papers can be accepted for filing, she noted that, following a conversation with her supervisor, Deputy Secretary of the Commonwealth Jonathan Marks, "[i]t was decided that we were going to ask [the Green

Party] to file the affidavit, but we were not going to reject solely based on not receiving the affidavit of the placeholder candidates." *Id.* at 34, 36, 68-69. Mathis indicated that the Department began accepting some "unsworn statements" from presidential electors "just recently with Covid." *Id.* at 44. Given that forbearance for electors, Mathis added that the Department, in its discretion, chose not to require that affidavits be presented for political-body candidates at the time of filing because the Election Code did not "requir[e] it of the major parties." *Id.* at 81.[2]

When asked if it is common practice for candidates to fax documents to the Department, Mathis explained that she does not "typically . . . check the fax resource [e-mail] account" because it generally is used only if someone had been asked to fax something, which was not the case here. *Id.* at 59. Because no one from the Green Party had followed up regarding the fax, which was sent without a cover letter, no one at the Department was aware that it had been received until counsel's inquiry three weeks later. *Id.* Finally, Mathis averred that, as of the September 7 hearing, no original candidate affidavits had been filed on behalf of Scroggin or Gale. *Id.* at 60.

**B.**

On September 9, Judge Crompton issued his memorandum opinion and order. The court began by explaining that "a prerequisite for substitution is [the] proper

---

[2]    Significantly, Mathis initially testified that neither Scroggin nor Gale had sought to formally withdraw their nominations by filing a sworn Withdrawal Notice before Candidate Substitution Forms were accepted for filing on behalf of Hawkins and Walker. N.T., 9/7/2020, at 55-57. On cross-examination, however, she corrected her earlier testimony and acknowledged that withdrawal forms had been received for both candidates on August 10, but did not indicate whether those forms constituted original, notarized versions that were presented for filing in the office, or if they, too, were delivered via fax or email. *Id.* at 71-72, 77-78.

nomination of a candidate by nominations, and the subsequent withdrawal of the candidate." Slip Op. at 6 (citing 25 P.S. § 2940; *In re Barr*, 956 A.2d 1083, 1087 (Pa. Cmwlth. 2008), *aff'd* 958 A.2d 1045 (Pa. 2008)). In order to be duly nominated, the Election Code requires that a political body candidate file an affidavit of candidacy with the Commonwealth. 25 P.S. § 2911(e)(5). A separate affidavit must be submitted for each candidate for office. *Id.*

With these procedural mandates in mind, the court agreed with Objectors that Walker's substitution was a nullity because no affidavit of candidacy had been filed on behalf of Gale, the Green Party's "placeholder" vice presidential candidate. Slip Op. at 6 (citing *In re Nomination Petition of Driscoll*, 847 A.2d 44, 50 (Pa. 2004); *Petition of Kloiber*, 362 A.2d 484 (Pa. Cmwlth. 1976)). The absence of Gale's affidavit was fatal to his nomination, thereby depriving Walker of the opportunity to invoke the substitution mechanism under Section 980 of the Election Code, 25 P.S. § 2940.[3]

However, the court disagreed with the Objectors' assertion that Scroggin's facsimile affidavit was insufficient to satisfy the affidavit requirement, relying principally upon *Kloiber*. There, the Bureau of Elections rejected a candidate's nomination petition, filed on the last day for doing so, when an examination of the same demonstrated that, although signed by a notary, the affidavits of both the circulator and the candidate submitted with the petition lacked the notary's seal. *Kloiber*, 362 A.2d at 485. "In all other respects, the petition was in good order." *Id.* The rejected petition was returned to the

---

[3]     Moreover, the court observed that the affidavit submitted on Walker's behalf was not notarized or dated, therefore it did "not meet the basic criteria for an 'affidavit,' which include being sworn before a notary. As such, her submission does not meet the Candidate Affidavit requirement for the office of Vice-President even under a generous construction of the statute." Slip Op. at 7 n.6.

candidate by mail four days later, a Saturday, but was not personally received by him until the following Monday when he returned from a trip. The candidate promptly went back to the notary, who affixed his seal on the nomination petition, and delivered the document to the Bureau. Yet the Bureau refused to accept the petition because it was by then untimely. *Id.* In resolving the case in favor of the candidate, the Commonwealth Court reasoned that, although nomination petitions lacking affidavits are fatally defective, "nomination petitions with improperly completed affidavits are amendable at the discretion of the [c]ourt." *Id.* at 486. Because the candidate acted in good faith and with due diligence in obtaining the notary's seal, the court permitted him to amend his petition *nunc pro tunc*, so as not to deprive him of the right to run for office based on a "technical oversight." *Id.*

Before discussing the validity of Scroggin's affidavit, the court found that the facsimile "was timely received by" the Department of State ("the Department") because it was transmitted before the 5:00 p.m. deadline on August 3, albeit by fax. Slip Op. at 7. The court also deemed relevant the fact that the Department accepted the nomination paper for filing because, by virtue of Hawkins' and Walker's affidavits as substituted candidates, the filing contained sworn affidavits for each of the offices, notwithstanding the absence of affidavits for the two individuals named therein as the Green Party's candidates for President and Vice President (Scroggin and Gale). Slip Op. at 4.

Turning to the three grounds proffered for rejection, the court initially was unpersuaded that the lack of an original signature on Scroggin's affidavit was grounds for its invalidation, reasoning that "[t]he point of an original or 'wet' signature is to ensure against fraud and to utilize for signature comparisons when assessing whether it is an

accurate signature as in a line challenge." *Id.* at 8. "In light of the indicia of reliability supplied by the notarization of her signature," Judge Crompton determined that "invalidating Scroggin's affidavit based on the lack of [an] original signature [would have] elevated form above substance." *Id.* Relatedly, the court considered the affidavit's "method of submission" by fax "not [to be] critical to compliance with the Candidate Affidavit requirement." *Id.* The court reasoned that "faxing was not precluded by the [Department's] Instructions," and that "electronic submission was expressly permitted based on the reduced staff and limitations resulting from Covid-19." *Id.*

Finally, the court determined that Scroggin was not required to "append" her affidavit to the nomination petition, notwithstanding the plain language of 25 P.S. § 2911(e), because the Department's "Instructions for Political Bodies do not contain the word 'appended' and there is no indication that [the Department] requires attachment of the Candidate Affidavits." *Id.* at 9. The court considered the fact that Department "staff did not advise the Green Party that there was any defect in" its submission to be a "compelling circumstance" because neither Scroggin nor Hawkins "had notice or opportunity to challenge the alleged defect in Scroggin's Affidavit in content or its submission." *Id.* at 9-10. In Judge Crompton's view, "Scroggin's Affidavit strongly evinces substantial compliance with the" Election Code's requirements because it was "signed, [] sworn, dated and notarized by a commissioned notary." *Id.* at 10. Under these circumstances, the court concluded that Scroggin's affidavit was satisfactory. *Id.* at 10-

11. Accordingly, the court denied Objectors' petition as to the exclusion of Scroggin and Hawkins.[4]

## II. Parties' Arguments

## A. Objectors' Brief

Objectors present three issues: (1) Whether the lower court erred in finding that Scroggin was the Green Party's duly nominated presidential candidate where she failed to append her affidavit to her nomination paper, a fact to which the parties' have stipulated; (2) Whether the court erred in permitting Hawkins' substitution, which Objectors' assert was a nullity as a consequence of Scroggin's deficient submission; and (3) Whether the court erred in concluding that Objectors had no recourse to challenge either candidate's status as a result of the Department's misapplication of the express provisions of the Election Code by accepting Scroggin's nomination paper for filing despite the absence of a valid affidavit. Objectors' Brief at 2.

Objectors assert that the Election Code requires that the nomination papers of a political body must include "an affidavit of each candidate nominated therein," 25 P.S. § 2911(e), in which the candidate avers, *inter alia*, that his or her "name has not been presented as a candidate by nomination petitions for any public office to be voted for at

---

[4]    The court also rejected Objectors' alternative claim that the Twelfth Amendment to the United States Constitution required Hawkins' removal from the ballot because his running mate properly was excluded. Slip Op. at 12-13. Finding no basis for that proposition in the text or history of the amendment, the court reasoned that the existence of a defect "as to one candidate on a political body slate does not impair the candidacy of the other candidates for other offices." *Id.* at 13 (citing *Swartz v. Helm*, 41 Pa. D. & C. 2d 322, 334 (Dauph. Cty. C.C.P. 1966)). The court determined that this construction was "consistent with the plain language of the Election Code which provides **'each'** duly-nominated candidate stands on his or her own merit, based on the eligibility and documentation criteria." *Id.* (emphasis in original).

the ensuing primary election," *id.* Citing this Court's decision in *Petition of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976), they contend that Scroggin's failure to affix her affidavit to the nomination paper was a "fatal defect" that voids and invalidates her filing. Objectors' Brief at 19-20 (quoting *In re Owens*, 436 A.2d 260, 261 (Pa. Cmwlth. 1981) ("[T]he Election Code makes no exceptions to the requirement for the filing of the affidavit.")).

Objectors additionally cite *In re Steel*, 105 A.2d 139 (Pa. 1954), for the proposition that the Code's use of the word "shall" in the various provisions governing the submission of nomination papers and affidavits is mandatory. There, a candidate claimed that he was not required to bind the pages of his nomination petition together, despite the express language of the Code requiring as much. In rejecting his argument, we said:

> In *In re Nomination Papers of American Labor Party*, 44 A.2d 48 (Pa. 1945) . . . we held that the requirement in Section 977 of the Election Code, 25 P.S. § 2937, with respect to serving a copy of objections to nomination petitions within the seven-day period allowed for the filing of objections in court was mandatory and not directory. Tested by the standards there applied, the 'shall' in the cited provision of Section 909 is no less mandatory. To hold otherwise would be to thwart the evident intent and purpose of the provision and to introduce confusion, if nothing worse, in connection with the filing of nomination petitions.

*Steel*, 105 A.2d at 141 (cleaned up); *see also Petition of Stout*, 219 A.2d 349 (Pa. 1966) (*per curiam*) (quashing appeal from denial of *mandamus* where Bureau of Elections refused to accept supplemental filings of judicial candidate whose original filing contained an insufficient number of valid signatures). Based upon these precedents, Objectors submit that the consequence for failing to adhere to the mandatory provisions of the Election Code governing the filing of nomination papers necessarily is the rejection of the filing.

Here, Objectors highlight the fact that the only affidavit that was appended to the Green Party's nomination paper for the presidential race was Hawkins'. Thus, they

assert, "interpreting Ms. Scroggin's faxed affidavit as having been properly 'appended' would lead to the absurd conclusion that the [Green Party] was seeking to nominate two candidates for President." Objectors' Brief at 23. They argue that Scroggin's conduct was even more irregular than that in *Steel* and *Stout* because she faxed a copy of her affidavit, *sans* cover letter or any other explanatory material, to a general fax number without notifying the Department or following up to ensure that it was obtained. This "casual approach" neither literally nor legally meets the requirement that one "append" an affidavit to the nomination paper, in their view. *Id.* at 24. Permitting the haphazard submission of necessary paperwork in this piecemeal manner, Objectors posit, "would not only create immense uncertainty and confusion within the Department, but it would also preclude potential objectors from making appropriate challenges" within seven-day period for doing so, another provision that this Court strictly has enforced. *Id.* at 25 (citing *In re Wagner*, 511 A.2d 754, 756 (Pa. 1986)).

Furthermore, in Objectors' view, the Department's discovery of a facsimile three weeks after the filing deadline did not render the affidavit "filed" in accordance with 25 P.S. §§ 2913 and 2937. They observe that those provisions align with Pennsylvania Rule of Civil Procedure 205.3, the official note to which provides expressly that "[t]his rule does not authorize the filing of legal papers with the prothonotary by facsimile transmission." *See also In re Estate of Karschner*, 919 A.2d 252, 255 (Pa. Super. 2007) (holding that "facsimile transmission of legal papers is not valid"). "The need for an original, physical copy is especially apparent here, where the signature on Ms. Scroggin's purported affidavit misspells her surname.[5] If an original is not filed, there is no opportunity for

---

[5] We observe that Scroggin's name was merely truncated.

objectors to examine the filed document for its authenticity." Objectors' Brief at 28 (citing Petitioners' Exhibit P-9).

Moreover, even if Scroggin had complied with the basic requirements of appending and filing an original affidavit, the Objectors contend that the facsimile itself is false and invalid. The purported affidavit suggests that, on August 3, 2020, Scroggin swore that she "desire[s] to be a candidate" for President of the United States. At that point in time, however, Hawkins already had been nominated ten days earlier. Thus, Objectors claim, as of the filing deadline, all evidence demonstrated that Scroggin no longer was a candidate for President, despite her assertion to the contrary. *Id.*

Objectors further assert that Scroggin and Gale's failure to file candidate affidavits cannot be rectified by the later substitution of other candidates because the Election Code permits substitutions "*only when the duly nominated candidate of the party dies or withdraws as a candidate.* Before there can be a '*substituted* nomination' there must have been a nomination." *Id.* at 29 (quoting *Watson v. Witkin*, 22 A.2d 17, 21 (Pa. 1941)). In order to effectuate a valid substitution, both the original and substituted candidates must "fully compl[y] with the rigors of the Election Code in effectuating the withdrawal and substitution at issue." *Id.* (quoting *Barr*, 956 A.2d at 1088). This Court has clarified, Objectors submit, that when considering whether the substitution of a candidate is permitted, there is a "significant distinction between a candidate who withdraws his name from nomination, and a candidate whose name is stricken from the ballot." *Id.* at 30 (quoting *Pa. Democratic Party v. Pa. Dep't of State*, 159 A.3d 72, 77 n.5 (Pa. Cmwlth. 2017)). In light of the placeholder candidates' failure to submit conforming affidavits, Objectors contend that they could not have been considered "duly nominated." Moreover,

because Hawkins and Walker were not named in the nomination paper, any attempt to cure the placeholders' deficient filings by submitting alternative affidavits was without effect. The Election Code requires that candidate affidavits be appended to the nomination paper "of each candidate nominated *therein*." 25 P.S. § 2911(e) (emphasis added). Accordingly, any attempted substitution was impossible. Objectors Brief at 30-31.

Objectors also assert that the lower court's decision to credit as a "compelling circumstance" the Department's acceptance of the nomination paper without providing express and immediate notice of apparent defects was erroneous. By its plain language, the Election Code provides that "[a]ll nomination petitions and papers received and filed within the period limited by this act shall be deemed to be valid, ***unless . . . a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside*.**" *Id.* at 33 (quoting 25 P.S. § 2937 (emphasis added)). Once an objection is made, a nomination petition or paper "shall be set aside" if the court finds that it "is defective under the provisions of section 976." *Id.* The Department's acceptance of a nomination paper is not the end of the inquiry into its validity, but merely the beginning. The Code establishes the process by which the public may examine and object to nomination papers that were accepted by the Department notwithstanding their defects. If the Department's acceptance of a filing was the final word on its validity, then the entire objection process would be superfluous. Neither the Code nor decades of precedent interpreting it contemplates this result. *Id.* at 33-34.

Finally, subject to constitutional exceptions, Objectors maintain that the judiciary cannot disregard the clear, substantive requirements of the Election Code through resort

to equitable principles. *Id.* at 34 (citing *In re Guzzardi*, 99 A.3d 381 (Pa. 2014) (reversing the Commonwealth Court's rejection, on equitable grounds, of a petition to set aside a candidate's nomination petition based upon the candidate's failure to file a statement of financial interests). Although the General Assembly could have permitted candidates to fax copies of affidavits to the Department for filing, Objectors note that they did not, requiring instead that an original affidavit be appended to the nomination paper. "Moreover, it is of no moment that Department personnel might have miscommunicated flawed filing instructions to the [Green Party's] representatives. This Court has repeatedly held that erroneous instructions and miscommunications from the Department or county boards of elections do not nullify the express provisions of the Election Code." *Id.* at 36 (citing *Guzzardi*, 99 A.3d at 388; *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d 1223, 1225 (Pa. 2004) ("*Appeal of Pierce*")). Because Scroggin did not adhere to the Code's mandates, Objectors conclude that she did not perfect her nomination and thereby deprived the Green Party of a duly nominated presidential candidate. For these reasons, Objectors ask that the party's candidates be removed from the ballot.

### B. Candidates' Brief

Candidates do not respond directly to the authority cited in Objectors' brief. They instead rely almost exclusively upon the findings and analysis of the Commonwealth Court, and assert that those findings control. In response to Objectors' complaint that Scroggin's affidavit "was not 'appended', in the usual sense," to her nomination paper, Candidates repeat the lower court's suggestion that Objectors seek to "elevate form over substance." Although the Department did not discover the affidavit until August 25, 2020,

they did timely receive it by the deadline for filing. That "bureaucratic snafu" did not constitute "a fatal defect." Candidates' Brief at 8. Because the Commonwealth Court accepted the facsimile as timely filed, Candidates submit that this Court would have to find an abuse of discretion to overturn its decision. *Id.* at 12.

Moreover, Candidates reject Objectors' argument that the date on Scroggin's affidavit renders it false, calling that argument "absurd on its face." *Id.* at 8, 14. Because Objectors offered no evidence of bad faith, fraud, or other disability, Candidates claim that "[t]his is yet another example of their distraction and spaghetti on the wall litigation tactics. It simply does not stick." *Id.* at 8, 12-13. Further, Candidates submit that Objectors' reference to our Rules of Civil Procedure as barring the submission of an affidavit by fax is inapt. *Id.* at 13-14 (citing *In re Johnson*, 502 A.2d 142, 145 (Pa. 1985) ("We disagree with the notion that this Rule [Pa.R.C.P. 1024(a)] or any other Rule of Civil Procedure is applicable to a challenge to a nomination petition or paper.")).

Finally, Candidates contend that the objection process worked as intended: Objectors had an opportunity to make their case, but failed to carry their burden. *Id.* at 14-15. Sidestepping Objectors' invocation of *Guzzardi* as distinguishable based upon the Commonwealth Court's finding that Scroggin's affidavit was timely filed by fax, Candidates rest on the "longstanding and overriding policy in our Commonwealth to protect the elective franchise." *Id.* at 15 (quoting *In re Nader*, 858 A.2d 1167, 1177 (Pa. 2004)). "The Election Code must be liberally construed in order to protect a candidate's right to run for office, and a voters' [*sic*] right to elect the candidate of their choice." *Id.* (quoting *In re Nomination Petition of Flaherty*, 770 A.2d 327, 331 (Pa. 2001)). Objectors' appeal, they conclude, "is another distraction." *Id.*

## C. Objectors' Reply

Objectors largely reiterate the arguments made in their principal brief. They contend that the Commonwealth Court erred in concluding that Scroggin's affidavit was "filed" because, in reality, the unsolicited facsimile merely "sat in an unmonitored email account—unprinted, undiscovered, and unacknowledged by Department staff"—"*for more than three weeks.*" Objectors' Reply Brief at 5 (emphasis in original). Objectors emphasize that "the Department *still* has not received the original Scroggin affidavit" as of the date their reply brief was filed. *Id.*

Additionally, Objectors assert that Candidates distort the record by suggesting that the Department permitted candidates to email unsworn statements until midnight on August 3. As evidence to the contrary, Objectors cite Bureau Director Jessica Mathis' testimony that presidential *electors* were permitted to submit their statements by email. That exception did not apply to candidates, Objectors claim, because the Department required the submission of original affidavits. *Id.* at 6-7 (citing Notes of Testimony ("N.T."), 9/7/2020, at 41, 44, 67). "Because Candidates' arguments (and the trial court's position) are unsupported by both fact and law, they must be rejected." *Id.*

Lastly, Objectors challenge the lower court's reliance upon the apparent "impracticability of appending Scroggin's Affidavit under current circumstances, including Covid-19." *Id.* (quoting Slip Op. at 9). They assert that the court could not explain why Scroggin was unable to do so in light of the fact that the Green Party managed to overcome that same "impracticality" when it actually appended five original affidavits to the nomination paper, including Hawkins'. In-person filing was not impractical, they note,

pointing to the Green Party slate's representative, Tim Runkle, who appeared in person to present the nomination paper for filing.[6]

### III. Analysis

This Court may reverse a Commonwealth Court order concerning the validity of challenges to a nomination paper if the court's findings of fact are not supported by substantial evidence of record, if there was an abuse of discretion, or if there was an error of law. *Driscoll*, 847 A.2d at 49. Because the Commonwealth Court erred as a matter of law in accepting the submission of a facsimile purporting to be Elizabeth Scroggin's affidavit as sufficient to satisfy her filing obligations as the Green Party's nominee for President, the court's order permitting the substitution of Howie Hawkins on the general election ballot must be reversed.

The nomination process for political bodies is distinct from that of political parties. Pursuant to Section 951 of the Election Code, political bodies uniquely may nominate multiple candidates for various offices using a single nomination paper. 25 P.S. § 2911(c). A nomination paper must specify, among other things, the name of the political body represented by the candidate, "the name of each candidate nominated therein," "the office for which such candidate is nominated," and the names and addresses of at least three but no more than five individuals authorized to fill a vacancy caused by the death or withdrawal of a candidate, should either occur. *Id.* § 2912. To secure a ballot line for

---

[6]     The county boards of elections of Philadelphia, Allegheny, Bucks, and Delaware Counties filed a brief as *amici curiae* in support of neither party. In light of the federal deadline for sending absentee ballots to military and overseas voters (September 18, 2020), they urge the Court to expedite our consideration of this appeal.

President and Vice President, a nomination paper must be signed by at least 5,000 qualified electors.[7]

The Election Code provides that "[t]here shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein, stating," *inter alia*,

> (1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; . . . (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for any such office; [and] (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year . . . .

*Id.* § 2911(e). The Code further directs that the nomination papers of candidates to be voted on statewide "shall be filed with the Secretary of the Commonwealth." *Id.* § 2913(a).

Pertinently, Section 976 of the Code specifies the procedures to be followed when a nomination is presented for filing:

> When any . . . nomination paper is presented in the office of the Secretary of the Commonwealth . . . for filing within the period limited by this act, it shall be the duty of the said officer . . . to examine the same. No . . . nomination paper . . . shall be permitted to be filed if -- (a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; . . . or [(e)] if the candidate named therein has filed a nomination petition for any public office for the ensuing

---

[7] Although the Code expressly sets a threshold signature requirement for nomination papers "at least equal to two per centum of the largest entire vote cast for any election candidate in the State at large at the last preceding election at which State-wide candidates were voted for," 25 P.S. § 2911(b), that mandate was abrogated by a federal consent decree. *See Constitution Party of Pa. v. Cortes*, No. 12-2726 (E.D. Pa. Feb. 1, 2018). Pursuant to that agreement, the Secretary has further stipulated that candidates for statewide election nominated by the Constitution Party, the Green Party, or the Libertarian Party need only submit 5,000 valid signatures to obtain access to the general election ballot as candidates for president and vice president.

primary, or has been nominated for any such office by nomination papers previously filed . . . .

Upon completion of any examination, if any nomination . . . paper is found to be defective, it shall forthwith be rejected and returned to the candidate or one of the candidates named therein, together with a statement of the reasons for such rejection.

*Id.* § 2936. Once a candidate has been duly nominated by a political body, she "may withdraw [her] name from nomination by request in writing, signed by [her] and acknowledged before an officer qualified to take acknowledgement of deeds, and filed in the office of the Secretary of the Commonwealth." *Id.* § 2938(b). To be effective, "written withdrawals shall be filed with the Secretary of the Commonwealth . . . at least eighty-five (85) days previous to the day of the general or municipal election," and "must be received in the office of the Secretary of the Commonwealth not later than five (5) o'clock P.M. on the last day for filing the same." *Id.* Finally, the Code provides that a court reviewing objections to nomination papers "shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or paper." *Id.* § 2937.

Objectors contend that Scroggin's failure to append her sworn affidavit to the slate's nomination paper compels the invalidation of her nomination as the Green Party's candidate for president, thereby negating the efficacy of Hawkins' substitution. They assert that the lower court erred in concurring with the candidates' rejoinder that the Election Code's express mandate that an affidavit "shall be appended to each nomination paper offered," *id.* § 2911(e), is not compulsory, but instead subject to a standard of substantial compliance. We agree that the lower court's legal determination is erroneous. It is well-settled that the "so-called technicalities of the Election Code" must be strictly enforced, "particularly where . . . they are designed to reduce fraud." *Appeal of Pierce*, 843 A.2d at 1234; *accord Appeal of James*, 105 A.2d 64, 65-66 (Pa. 1954); *see also*

*American Labor Party*, 44 A.2d at 50 ("Use of the word 'shall' indicates that the statutory time limit is mandatory."); *Steel*, 105 A.2d at 141 ("[T]he 'shall' in the cited provision of Section 909 [of the Election Code] is no less mandatory [than the 'shall' appearing in Section 977]. To hold otherwise would be to thwart the evident intent and purpose of the provision and to introduce confusion, if nothing worse, in connection with the filing of nomination petitions.").

One of the Election Code's critical anti-fraud mechanisms is the longstanding requirement that a candidate "make affidavit of facts pertinent to his candidacy," a mandate that predates the Code by more than two decades. *Winston v. Moore*, 91 A. 520, 523 (Pa. 1914). As this Court previously has explained:

> [T]he provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process. The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process. Thus, the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process.

*Cianfrani*, 359 A.2d at 384. The purpose of this provision as applied to nomination papers is to identify and disqualify so-called "sore loser" candidacies, *i.e.*, those individuals who unsuccessfully attempted to secure the nomination of a political party before filing nomination papers as a candidate of a political body. *See In re Nomination Paper of Cohen*, 225 A.3d 1083, 1093-94 (Pa. 2020) (Wecht, J., dissenting) (tracing the legislative history of the Commonwealth's "anti-party raiding" prohibitions). To that end, it has long been the case that a candidate's failure to present and file an affidavit of candidacy with his or her nomination paper is a fatal defect necessitating its rejection. *Brown v. Finnegan*, 133 A.2d 809, 813 (Pa. 1957) (holding that a candidate for judicial office by nomination paper who did not make and file an affidavit in conformity with the

requirements of the Election Code was not permitted to be added to the general election ballot).

The Election Code affords the Department of State no discretion to accept a facially deficient nomination paper when presented for filing. When a "nomination paper is presented in the office of the Secretary of the Commonwealth," it is the duty of the officer receiving said nomination paper to examine it for "material errors or defects apparent on the face thereof, *or on the face of the appended or accompanying affidavits*." *Id.* § 2936 (emphasis added). If a defect is found, the nomination paper "shall [not] be permitted to be filed." *Id.* Here, it is undisputed that the nomination paper at issue held out Elizabeth Scroggin as the Green Party's intended nominee for President of the United States. Indeed, Scroggin's name alone was included among the more than 700 pages of submitted paperwork as the party's nominee for that office. It is equally undisputed that the Green Party did not submit an affidavit of candidacy for Scroggin at the time the nomination paper identifying her as the party's presidential nominee was presented for filing. The parties have stipulated to this point.

Although the use of a placeholder candidate is a permissible feature of the nominating process for political bodies, the Election Code draws no distinction between temporary candidates and permanent ones. In order to substitute the name of a *bona fide* nominee of a political body onto the ballot in that manner, a placeholder first must be duly nominated in accordance with the provisions of the Election Code. *Barr*, 956 A.2d at 1087. As we have made clear, "the failure to affix an affidavit of the candidate" to a nomination paper constitutes "a fatal defect" that "*cannot be cured by subsequent conduct*." *Cianfrani*, 359 A.2d at 384 (emphasis added). By appending Hawkins' affidavit

to the nomination paper instead of Scroggin's, the Green Party failed to comply with that statutory command.

In finding to the contrary, the Commonwealth Court erred in a number of respects. First, by allowing the submission of a facsimile of Scroggin's purported affidavit, the court contravened a critical anti-fraud election regulation. *Id.* ("The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process."). Just as the signatures of qualified electors must be submitted in original, or "wet," form so as to verify their authenticity, so, too, must candidates submit genuine, sworn-and-signed affidavits to satisfy their filing obligations. The court's reliance upon *Kloiber* to excuse Scroggin's deficiency in that regard was particularly misplaced. There, the court excused the candidate's initial failure to produce a conforming affidavit upon a showing of due diligence, after the candidate quickly secured a genuine seal from the notary public who originally signed his nomination petition but had inadvertently failed to affix a seal thereto. *Kloiber*, 362 A.2d at 486.

The facts here, conversely, are readily distinguishable because Scroggin has made no effort to present her original affidavit to the Department, nor has she explained why she was unable to do so by the filing deadline (or since). Thus, it would be difficult to conclude that she acted with due diligence in rectifying her deficient filing. According to Mathis' testimony just last week, the Bureau still has not received an original affidavit from Scroggin—more than a month after the filing and withdrawal periods have closed. The record before us consists of only a photocopy of the faxed submission, a screenshot of the relevant portion of which is reproduced below. Notably, the last two letters of the candidate's signature on that form—which was sent to a general fax number without a

cover letter—plainly appear to have been cut off.  These facts undermine the lower court's resort to "indicia of reliability," because there is no way to confirm that the candidate properly signed the affidavit or that a genuine seal was affixed without the ability to examine the original.[8]

**Petitioners' Exhibit P-9**

I swear (or affirm) to the above parts as required by the laws applicable to the office I seek.

Sworn (or affirmed) and subscribed before me this

___3rd___ day of ___August___.

20 ___20___

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rafeek T. McEachin; Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Oct. 10, 2021
Member, Pennsylvania Association of Notaries

(SEAL)

(Signature of Person Administering Oath)

My Commission Expires ___10/10/2021___

PRESIDENT OF THE UNITED STATES
Office/District

Elizabeth 'Faye' Scrogg'
Signature of Candidate

ELIZABETH FAYE SCROGGIN
Printed Name of Candidate

ELIZABETH FAYE SCROGGIN
Name as it is to appear on the Ballot

233 W PENNSYLVANIA AVE  19335
Street Address/Post Office/Zip Code

DOWNINGTOWN        CHESTER
City/Borough/Township      County

DOWNINGTOWN BOROUGH WESTWARD
Election District of Candidate          NORTH
(District Where Registered To Vote)    PRECINCT

610 241 0351
Telephone Number

The court also erred in excusing the facsimile's "method of submission" based upon the perceived "impracticality of appending Scroggin's Affidavit under current circumstances, including Covid-19."  Slip Op. at 9.  As Objectors observe, there is no evidence that pandemic-induced delays deprived Scroggin of the opportunity to have her

---

[8]     Furthermore, the Commonwealth Court's decision in *Kloiber* arguably is in tension with our holding in *Cianfrani*—which was decided three months after *Kloiber*—that the failure to append an affidavit is a fatal defect incapable of being cured by subsequent conduct.  Although the issue of *Kloiber*'s validity is not before us, we observe that under neither standard would Scroggin be entitled to relief here.

affidavit submitted in person, nor has she suggested as much in these proceedings. The court reasoned that electronic submission was "expressly permitted based on the reduced staff and limitations resulting from" the pandemic. *Id.* at 8. However, Mathis specifically testified that the Department began accepting, via e-mail, the submission of unsworn statements from the candidates on behalf of their twenty presidential *electors*. N.T. 9/7/2020, at 67. She did not say that candidates were permitted to submit their own affidavits via email, sworn or otherwise. That is likely because the submission of an original signature was necessary to effectuate the filing. Moreover, the fact that the nomination paper and related affidavits for Hawkins and every candidate other than Scroggin and Gale were delivered in person belies the court's suggestion that submission by fax or email was permissible for candidates. Rather, it appears that the Green Party mistakenly believed that it could satisfy the filing requirements by submitting the affidavits of Hawkins and Walker instead of those executed by the candidates actually named in the nomination papers, and then scrambled to obtain Scroggin's affidavit (but not Gale's) before the 5:00 p.m. deadline when it became apparent that the filing could be rejected later during the objections process.

The court's determination that "substantial compliance" was sufficient to excuse Scroggin's oversight likewise is unsupported by the precedent outlined above, which makes clear that strict compliance with the affidavit requirement is mandatory, not directory. *See Brown*, 133 A.2d at 813; *Appeal of James*, 105 A.2d at 65-66. Judge Crompton reasoned that, notwithstanding the plain language of 25 P.S. § 2911(e), Scroggin was not required to "append" her affidavit to the nomination petition because the Department's instructions to candidates did not use the word "appended" and

because Scroggin lacked notice that the alleged defect could jeopardize her candidacy. But it is the Election Code's express terms that control, not the written guidance provided by the Department. And as this Court repeatedly has cautioned, even erroneous guidance from the Department or county boards of elections cannot nullify the express provisions of the Election Code. *See Guzzardi*, 99 A.3d at 388 ("[E]ven if there was some miscommunication at the Department of State . . ., this does not offset the underlying, self-acknowledged mistake" of the candidate "in failing to apprehend, from the outset, the express statutory requirement to file a statement of financial interests with the Election Commission."); *Appeal of Pierce*, 843 A.2d at 1225 (holding that the delivery of absentee ballots by third persons rendered them invalid, notwithstanding indications from the Allegheny County Board of Elections that the practice was permitted).

But in any event, the Secretary's guidance for political-body candidates clearly and accurately instructed the candidates as to the method, time, and place for filing affidavits of candidacy:

10. **CANDIDATE'S AFFIDAVIT AND ETHICS STATEMENT**: Each candidate for public office must sign and submit *one* CANDIDATE'S AFFIDAVIT per set of nomination papers. The CANDIDATE'S AFFIDAVIT is a separate form and may be obtained from the **Bureau of Election Services and Notaries, Room 210 North Office Building, Harrisburg, PA 17120**. . . .

11. **FILING FEES**:

   a) For Statewide offices (President of the United States, United States Senator, Attorney General, Auditor General, State Treasurer) – $200.00; . . .

   b) The filing fee for offices specific in (a) must be presented with the nomination paper and must be made by CERTIFIED CHECK or MONEY ORDER payable to the Commonwealth of Pennsylvania. A separate filing fee must be submitted for each candidate named in the nomination paper.

12. **TIME AND PLACE TO FILE**: Nomination papers for all offices listed in 11(a) are filed in the office of the Secretary of the Commonwealth, at

**Room 210 North Office Building, Harrisburg, PA 17120,** and must be filed by 5:00 P.M. on the deadline to file nomination papers. Nomination papers for local offices are filed in the Office of the County Board of Elections.

Petitioner's Exhibit P-4 (Political Body Nomination Paper General Instructions Sheet (DSBE PB), at 2) (emphases in original); *see* N.T. 9/7/2020, at 14-18. That guidance provides the specific office and room number in which the affidavit "must be filed." It says nothing about emailed or faxed submissions, and the Green Party Candidates cite no precedent for permitting the substitution of a facsimile where a sworn affidavit with an original signature is required. Once again, the record undermines the court's conclusion.

Additionally, Mathis testified that she instructed Runkle—the agent designated by Scroggin and the other Green Party candidates to deliver the nomination paper—that he was required to file affidavits for both Scroggin and Gale because they were necessary to allow for timely objections. *Id.* at 33. Thus, the Green Party expressly was put on notice by the Bureau, in person, that an original affidavit was required. Perhaps recognizing the existence of that fatal defect, the facsimile of Scroggin's affidavit shows that it purportedly was notarized in Montgomery County that same day. By sanctioning this short-circuiting of the nomination process, the Commonwealth Court impinged the Objectors' statutory right to challenge Scroggin's candidacy. Qualified electors who wish to object to nomination papers, whether because of an insufficient number of valid signatures or material defects on the face of the nomination paper or affidavits of candidacy, only have seven days from the filing date to do so. 25 P.S. § 2937. The Election Code requires that an original affidavit be "appended" to a candidate's nomination paper at the time of filing in order to avoid this exact scenario. Because anyone can send an unsolicited facsimile of an affidavit to a general fax number

associated with the Department of State, absent strict compliance with the presentment and filing mandate, probity in the nominations process cannot be assured.

The consequences of the Green Party's deficient filings are clear. In order to effectuate the substitution of one political body candidate for another, two predicates must be satisfied. First, a candidate must be duly nominated by nomination papers properly presented and accepted for filing, along with an original affidavit, in the Office of the Secretary of the Commonwealth. And second, after the nomination, that candidate must either die or formally withdraw by way of a notarized writing filed with the same office. Only when those two events occur may another candidate be substituted. *See Watson*, 22 A.2d at 21 ("The authorized party committee can make *substituted* nominations *only when the duly nominated candidate of the party dies or withdraws as a candidate*. Before there can be a '*substituted* nomination' there must have been a nomination.") (emphasis in original). Thus, only "full[] compli[ance] with the rigors of the Election Code" will suffice to effectuate the nomination and withdrawal of a placeholder. *Barr*, 956 A.2d at 1088. Because full compliance was lacking here, the efforts to substitute Hawkins for Scroggin were ineffectual. Having failed to adhere to the Election Code's express commands, Scroggin could not be considered the Green Party's duly nominated candidate for President. Scroggin's candidacy, like Gale's, was a nullity, thereby depriving the Green Party's *bona fide* nominees of the opportunity to access the general election ballot by substitution.[9]

---

[9]    The record is devoid of documentary evidence to substantiate whether Scroggin moved to withdraw her name from nomination in accordance with the Election Code's requirements that withdrawals also be effectuated in a sworn writing. *See* 25 P.S. § 2938.

## IV. Conclusion

In sum, the Commonwealth Court erred in dismissing Objectors' petition to set aside Scroggin's nomination, and Hawkins' substitution, as the Green Party's candidate for President of the United States. Scroggin failed to comply with the Election Code's strict mandate that she append an original affidavit to her nomination paper, and the party's use of Hawkins' affidavit while presenting a nomination paper in which he was not "named therein" did not suffice to cure that error. That defect was fatal to Scroggin's nomination and, therefore, to Hawkins' substitution. Accordingly, the Secretary of the Commonwealth is directed to remove Howie Hawkins and Angela Walker from the general election ballot as the Green Party's nominees for President and Vice President. The stay entered by this Court on September 14, 2020, is hereby lifted.

Justices Baer, Todd, Donohue, and Dougherty join this opinion.

Chief Justice Saylor files a concurring and dissenting opinion in which Justice Mundy joins.